IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| ROYCE D. SHYE, | ) |
| | ) |
| PLAINTIFF, | ) No. 2:14-cv-00007 |
| | ) Judge Sharp/Bryant |
| v. | ) |
| | ) |
| W.B. MELTON, SHANNON HARVEY, | ) |
| and RODNEY PHILLIPS, | ) |
| | ) |
| DEFENDANTS. | ) |

**To: The Honorable Chief Judge Kevin H. Sharp, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 29) be **GRANTED** and that this action be **DISMISSED** with prejudice for failure to state a claim under 42 U.S.C. § 1983. The Magistrate Judge also **RECOMMENDS** that this dismissal count as a **STRIKE**[1] under 28 U.S.C. § 1915(g);[2] that this be considered the final judgment in this case; and that any appeal **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

---

1 The Magistrate Judge notes that Plaintiff filed three other lawsuits against Defendant Melton and Defendant Harvey. (*Shye v. Melton et al.*, No. 2:13-00113; *Shye v. Melton, et al.,* No. 2:13-0130; and *Shye v. Melton et al.,* No. 2:14-00025). In *Shye v. Melton*, 2:13-00113 and *Shye v. Melton,* No. 2:13-0130, Magistrate Judge Griffin recommended dismissal although she declined to recommend that the dismissal count as a strike under 28 U.S.C. § 1915(g). Magistrate Judge Griffin found that "[t]he Court previously found that this action was not frivolous and that the plaintiff had stated a claim for relief . . . and the Court does not view a judgment in favor of the Defendants upon summary judgment and not for those grounds specifically enumerated within Section 1915(g) to be a dismissal that falls within the purview of Section 1915(g)." *See Shye v. Melton,* No. 2:13-0130, 2014 WL 6818637, at *6 (M.D. Tenn. Dec. 2, 2014); *Shye v. Melton,* No. 2:13-0113, 2014 WL 6873154, at *8 (M.D. Tenn. Dec. 3, 2014). Here, the undersigned Magistrate Judge notes that the Court likewise previously found that Plaintiff stated a claim for relief. *See* Order of February 07, 2014 (Docket Entry 3). However, given the evidence at the summary judgment stage, and as explained below, the undersigned Magistrate Judge finds that this dismissal with prejudice should count as a strike under 28 U.S.C. § 1915(g) based on Plaintiff's failure to state a claim under 42 U.S.C. § 1983.

2 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is

## I. Statement of the Case

Plaintiff, proceeding *pro se* and *in forma pauperis*, is now an inmate at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee and at all times relevant to the Complaint was an inmate at Overton County Justice Center (OCJC) in Livingston, Tennessee. (Docket Entry 1 and 20). On January 28, 2014, Plaintiff filed his Complaint against Defendants alleging violation of civil rights under 42 U.S.C. § 1983. (Docket Entry 1). On February 07, 2014, the District Judge referred this case to the Magistrate Judge. (Docket Entry 3). On November 19, 2014, Defendants filed the instant Motion along with a Memorandum of Law in Support, a statement of undisputed facts, and various supportive exhibits. (Docket Entry 29; 31-32; 36-37). Defendants argue that they are entitled to summary judgment because Plaintiff "has not come forward with sufficient proof to establish that he has suffered the deprivation of any Constitutional right." (Docket Entry 31, p. 2). They also raise a bevy of other defenses and arguments, including failure to allege an injury, failure of process, failure to exhaust administrative remedies, and qualified immunity. (Docket Entry 31). Plaintiff has not filed a response and the time to do so has passed pursuant to the Scheduling Order. (Docket Entry 10). Therefore, the matter is now properly before the Court.

## II. Standard of Review

### A. 42 U.S.C. § 1983

A plaintiff who brings a § 1983 claim "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citation omitted).

### A.     Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (FED. R. CIV. P.), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court must "decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Anderson,* 477 U.S. at 251–52).

"The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Adams v. Rockafellow,* 66 F. App'x 584, 585 (6th Cir. 2003) (unpublished opinion) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Adams,* 66 F. App'x at 585 (citing *Anderson,* 477 U.S. at 248-49; *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir. 1993)). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

If the nonmoving party fails to meet its burden, the Court may rely on the facts advanced by the moving party. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). However, the Court may not grant a motion for summary judgment simply because a nonmoving party fails to respond. *See Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419 (6th Cir. 2005) (unpublished opinion). Instead, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller,* 141 F. App'x at 419 (citation omitted).

When a plaintiff is *pro se*, the Court will review the plaintiff's pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005) (unpublished opinion) (citation omitted).

### III. Summary of Allegations

Plaintiff brings this action against Defendants in their personal and official capacities. (Docket Entry 1, pp. 5-7). Defendant Melton is identified as Sheriff Melton, Defendant Harvey was the Jail Administrator for the OCJC, and Defendant Phillips was a Staff Sergeant at the OCJC. (Docket Entry 31, pp. 1, 16; Docket Entry 32, p. 10, and Docket Entry 37, p. 1).

First, Plaintiff alleges that he is "[i]nadequately being housed in an unsafe environment." (Docket Entry 1, p. 8). He alleges that because he is in protective custody, he should be housed in a "separate . . . and self-contained" area. (Docket Entry 1, p. 8). He also alleges that there is an "absence of administrative oversite, as well as [a] lack of supervision at the OCJC." (Docket Entry 1, p. 8). He alleges that he is "in jeopardy of mental and physical harm due to the incompetence of certain staff members . . . ." (Docket Entry 1, p. 8). He also alleges that Defendant Phillips "exposed [Plaintiff] and three other protective custody inmates to an

extremely dangerous situation" by allowing them to be exposed to an inmate in possession of hair clippers who had a history of threatening behavior. (Docket Entry 1, pp. 8-9). Finally, he alleges that other inmates are able to "pop" or open locked cell doors. (Docket Entry 1, p. 9).

Second, Plaintiff alleges that Defendant Phillips "refused to allow a member of his staff to deliver . . . legal envelopes" to Plaintiff and Plaintiff's cellmate and that Defendant Phillips "continues to hinder the mail system of the OCJC." (Docket Entry 1, pp. 11-12). He alleges that there are mail procedures posted on a wall at the OCJC and that:

> [I]t is not stated that the Jail Administrator, Shannon Harvey is the only one who can issue a legal envelope. Ms. Harvey's own statement under oath to the court has been that any member of her staff may issue a legal envelope upon Request. [Defendant] Phillips and his staff have constantly shown a pattern of indifference towards myself [sic] and my cellmates.

(Docket Entry 1, p. 11). Plaintiff alleges that "[t]he Jail Administrator of this facility continues to allow [Defendant] Phillips and his staff to harass and assault both verbally and physically the inmate population of the [OCJC]." (Docket Entry 1, p. 12).

Third, Plaintiff alleges various claims regarding medical treatment. He alleges that he has suffered "racial indifference in medical treatment by the medical staff and the administration at the OCJC." (Docket Entry 1, pp. 13-15). Plaintiff alleges that his former cellmate, an African American, was given a "topical cream" although "[w]hite inmates were given shots to treat their conditions." (Docket Entry 1, p. 14). He alleges that he was exposed to a sick cellmate and that "staff did not rush to clean [his] cell after [his cellmate] left as they did the white inmates' cells." (Docket Entry 1, pp. 14-15). Plaintiff alleges that his current cellmate was not tested for tuberculosis. (Docket Entry 1, p. 16).

Fourth, Plaintiff alleges that he has been "falsely labeled as a sex offender." (Docket Entry 1, p. 15). Fifth, Plaintiff alleges that he is not being fed a proper diet. (Docket Entry 1, p.

15). Finally, Plaintiff alleges that the OCJC Disciplinary Board has "the power to sentence an inmate to whatever they feel necessary" and that the Board lacks a required "administrator, supervisor, or inmate rep[resentative]." (Docket Entry 1, p. 18).

## IV. Analysis

Again, Plaintiff brings this action against Defendants in their personal and official capacities. "Personal-capacity suits[3] seek to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation and internal quotation omitted).

When a claim is against a defendant in his personal capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166 (citation omitted). Still, a plaintiff must plead facts to show that the defendant was personally involved in the alleged deprivation. *See Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) (unpublished opinion). When a plaintiff brings a § 1983 personal capacity claim against a defendant who had a supervisory role, "respondeat superior" will not apply to "impute liability" onto such a defendant unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Sarr v. Martin*, 53 F. App'x 760, 762 (6th Cir. 2002) (unpublished opinion) (citation and internal quotation omitted).

---

3 The Magistrate Judge notes that "personal capacity" is used synonymously throughout the case law with "individual capacity." *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").

When a claim is against a defendant in his official capacity, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky*, 473 U.S. at 166 (citation omitted). Again, "local governments are responsible only for 'their *own* illegal acts' . . . . They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (citation omitted). Still, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. To that end, a plaintiff must show "deliberate indifference" on the part of the official. *Connick*, 131 S. Ct. at 1360. This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (citation omitted).

Ultimately, the Magistrate Judge finds that Defendants have established a lack of any genuinely disputed material fact regarding the named Defendants' involvement with the alleged violations and a lack of any genuinely disputed material fact regarding an official policy at the OCJC. Moreover, Defendants have established an absence of evidence to support Plaintiff's claims.

### i. Personal Capacity Claim

Here, even construing the Complaint liberally, the Magistrate Judge is unable to find a single instance where Plaintiff mentions Defendant Melton or his role as the Sheriff in the alleged violations. Even inferring that Plaintiff meant to name Defendant Melton when he refers to "the staff and administration" of the OCJC, this would amount to, at most, a claim of supervisory liability on the part of Defendant Melton. Without a showing that Defendant Melton

encouraged or directly participated in an alleged violation, of which there is no such showing, the claim against Defendant Melton must fail as a matter of law.

Next, Plaintiff mentions Defendant Harvey and Defendant Phillips a handful of times, yet fails to show how they were personally involved. As detailed above, Plaintiff refers to Defendant Phillips four times. (Docket Entry 1, p. 9-12). He alleges that Defendant Phillips exposed Plaintiff and other inmates to a hair clipper wielding inmate, that he interfered with the delivery of legal envelopes to Plaintiff and Plaintiff's cellmate, that he and his staff have shown a pattern of indifference towards Plaintiff and his cellmates, and that he and his staff were abusive to the inmates. (Docket Entry 1, p. 9-12). Plaintiff refers to Defendant Harvey twice; once to state that she is the only one who can issue a legal envelope and once to allege that she allows Defendant Phillips and his staff to be abusive towards inmates. (Docket Entry 1, pp. 11-12).

As a threshold matter, Plaintiff has not requested class certification and lacks standing to raise the claims of other inmates. *See Newsom v. Norris,* 888 F.2d 371, 381 (6th Cir. 1989). Moreover, without deciding whether a violation occurred, the Magistrate Judge finds no genuine dispute as to whether Defendant Phillips or Defendant Harvey was personally involved in the alleged violations. Plaintiff's allegations that Defendant Phillips interfered with the staff, that he and his staff have shown a pattern of indifference towards Plaintiff, and that he and his staff were abusive all amount to claims that Defendant Phillips is responsible for the wrongful acts of his subordinates. Likewise, Plaintiff's claim that Defendant Harvey allowed Defendant Phillips to be abusive towards inmates amounts to the same type of supervisory claim. Respondeat superior does not apply outright and Plaintiff fails to show that these Defendants encouraged staff to deprive Plaintiff of envelopes or to act inappropriately. To the extent that Plaintiff alleges a

failure to act on the part of either supervisory Defendant, this is likewise an insufficient basis for liability. *See Hays v. Jefferson Cnty., Ky.,* 668 F.2d 869, 873-74 (6th Cir. 1982).

Plaintiff's remaining allegation, that Defendant Phillips was responsible for exposing Plaintiff to a dangerous inmate, also fails. Plaintiff testified that the inmate, who was not a protective custody inmate, could have "slash[ed]" one of the protective custody inmates . . . because he had access to razors and hair clippers. (Docket Entry 33-1, p. 102). Plaintiff also testified that he allowed the inmate to cut his hair for the sole purpose of capturing on camera that the inmate was in the maximum security pod despite not being a protective custody inmate. (Docket Entry 33-1, p. 101). Plaintiff believed that this was a violation of the rules and filed a grievance to that end. (Docket Entry 33-1, p. 101). However, without reaching the issue of failure to exhaust, Plaintiff's averments fail to implicate Defendant Phillips or show that he was involved in placing the purportedly dangerous inmate in proximity of Plaintiff. Instead, there is no genuine dispute that Plaintiff purposefully sat within arm's reach of the inmate.

Therefore, based on the undisputed facts, the Magistrate Judge finds that Defendants show a lack of any genuinely disputed material fact regarding the named Defendants' personal involvement.

### ii. Official Capacity Claim

"Official municipal policy includes . . . practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359 (citation omitted). In the absence of such an official policy, the Court still considers whether Plaintiff shows "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *City of*

*St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168 (1970)).

Here, Plaintiff repeatedly refers to "a pattern of indifference" or "indifferential [sic] attitude and behavior" that Defendants and other unnamed parties exhibited. (Docket Entry 8, pp. 10, 11, 15, 16). The Magistrate Judge infers that Plaintiff means to assert that such "indifference" constitutes a policy or custom. However, no reasonable jury could find as such based on the evidence before the Court. Instead, Defendants establish the following undisputed facts which preclude a finding of a policy or custom of indifference at the OCJC: the malfunctioning locks were replaced upon Defendant Harvey learning about the inmates manipulating them; Plaintiff was placed in protective custody to protect him from the general population given his history as a sex offender; Plaintiff received the legal envelopes shortly after requesting them; Plaintiff suffered no medical symptoms; OCJC personnel determined that Plaintiff's ill cellmate did not need to be moved only after evaluation by a doctor; all meals were approved by a dietician and the Jail nurse never indicated that Plaintiff required additional portions; and Plaintiff never suffered any abuse of authority by the Disciplinary Board. (Docket Entry 32, pp. 4, 9,; Docket Entry 37, p. 8).

Finally, to the extent that Plaintiff's Complaint includes allegations of a failure to train OCJC staff, Plaintiff's claim fails. Plaintiff alleges that he is "being housed in this facility with the lack of training, professionalism, and understanding of the laws, guidelines, and statutes governing the state of Tennessee as well as TDOC." (Docket Entry 1, p. 8). He alleges that there is a "lack of oversite and supervision." (Docket Entry 1, p. 10). However, in order for a failure to train claim to rise to the level of a policy concern, Plaintiff must show "deliberate indifference" of an official. *Connick*, 131 S. Ct. at 1360. For the same reasons as articulated in the preceding

paragraph and that preclude a finding of a policy of indifference, the Magistrate Judge finds no genuine dispute as to the issue of indifference or proper training on the part of Defendants.

Therefore, the Magistrate Judge finds that Defendants show a lack of any genuinely disputed material fact regarding an official policy or a custom at the OCJC.

### iii. Unnamed Defendants and Constitutional Merits

Plaintiff's claim should also be dismissed due to an absence of evidence to support Plaintiff's claims. This finding extends to the unnamed parties in the Complaint. Under FED. R. CIV. P. 10(a), a plaintiff must "name all the parties." However, Plaintiff's Complaint is replete with references to "the staff and administration," "certain staff members," "the medical staff and the administration," and "the doctor, and [the] nurse." (Docket Entry 1, pp. 8, 10, 13, 1-17). The Magistrate Judge denied Plaintiff's sole "Motion for Evidentiary Discovery" for failure to comply with Local Rules and Plaintiff did not file another discovery motion or amend his Complaint to establish the identity of the unnamed parties. (Docket Entry 24). The Magistrate Judge could recommend dismissal without prejudice as to the unnamed parties under FED. R. CIV. P. 4(m). However, the Magistrate Judge finds such a recommendation unnecessary in light of the following analysis and, instead, recommends dismissal with prejudice.

First, the Magistrate Judge construes Plaintiff's claim that he is "being housed in an unsafe environment" as a claim under the Eighth Amendment. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). However, a prison official will be deemed to have violated the Eighth Amendment only when his action meets both an "objective" and a "subjective" requirement. *Farmer*, 511 U.S. at 834. "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component ensures that

the defendant prison official acted with a sufficiently culpable state of mind." *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 681 (6th Cir. 2013) (citation and internal quotation omitted). "In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834 (citation omitted).

However, as discussed, the undisputed evidence shows that prison officials were not deliberately indifferent to Plaintiff's safety.[4] There is also an absence of evidence to support Plaintiff's medical treatment claims. Of course, deliberate indifference to a prisoner's "serious medical needs" violates the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008) (citation and internal quotation omitted). For example, the "Eighth Amendment's objective component is violated by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes." *Hunt v. Reynolds*, 974 F.2d 734, 736 (6th Cir. 1992).

Here, there is no evidence that Plaintiff had a serious medical need. Although Plaintiff alleges that his cellmate had "puss dripping from every part of his body," Plaintiff's understandable efforts to avoid him hardly amount to a serious medical need such as an inability to breathe. Plaintiff also alleges that his cellmate was not tested for tuberculosis. (Docket Entry 1, p. 16). However, Plaintiff offers nothing more than a conclusory and unsupported allegation.

Plaintiff also alleges that he has been "falsely labeled as a sex offender." (Docket Entry 1, p. 15). However, Defendants establish that Plaintiff "had a previous conviction for child abuse" and that prisoners with such past convictions are held in the maximum security pod along with

---

4 *See supra* Part.IV.i-ii.

"sex offen[ders], informants, or those who have been threatened by other inmates . . . ." (Docket Entry 32, p. 1; Docket Entry 37, p. 2).

Next, there is an absence of evidence to support Plaintiff's claim that he was denied legal envelopes. Instead, he concedes that after requesting the envelopes, he received them "a few days later." (Docket Entry 33-1, p. 107). Similarly, there is an absence of evidence as to Plaintiff's claim that he was denied proper meals. Plaintiff testified in his deposition that he did not receive sufficient portions, that he lost weight, and that the OCJC stopped providing milk. (Docket Entry 33-1, pp. 10-11). The Sixth Circuit has stated that the withholding of food may violate the Eighth Amendment. *See Cunningham v. Jones,* 567 F.2d 653, 655-56 (6th Cir. 1977). However, Plaintiff received "three meals per day" at the OCJC. (Docket Entry 32, p. 6). Defendants submit a picture of one such meal as an example. (Docket Entry 37-13). Again, "[t]he Eighth Amendment is concerned only with deprivations of essential food, . . . or other conditions intolerable for prison confinement . . . [n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond v. Settles,* 450 F. App'x 448, 454-55 (6th Cir. 2011) (unpublished opinion) (citation and internal quotation omitted). Here, Plaintiff experienced some "discomfort" because of the milk alternative offered at the OCJC but did not seek medical attention for it. (Docket Entry 33-1, p. 10). He also experienced weight loss. (Docket Entry 33-1, p. 11). However, this occurred over eight months as Plaintiff went from 240 pounds to 205 pounds. (Docket Entry 32, pp. 3-4). The Magistrate Judge finds that three meals of sufficient portions and incidental weight loss do not amount to a deprivation of Eighth Amendment rights.

Finally, to the extent that Plaintiff alleges that there are insufficient or arbitrary procedures on the OCJC Disciplinary Board, Plaintiff's claims are conclusory and unsupported.

Moreover, Plaintiff concedes in his deposition that this claim pertains to other inmates and that he never "suffer[ed] the abuse of authority" by the Board. (Docket Entry 33-1, p. 22).

Therefore, the Magistrate Judge finds that Defendants are entitled to summary judgment because they have established an absence of evidence to support Plaintiff's claims. As such, the Magistrate Judge need not reach Defendants' alternative arguments about failure to allege an injury, failure of process, failure to exhaust administrative remedies, and qualified immunity.

## V.     Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 29) be **GRANTED** and that this action be **DISMISSED** with prejudice for failure to state a claim under 42 U.S.C. § 1983. The Magistrate Judge also **RECOMMENDS** that this dismissal count as a **STRIKE** under 28 U.S.C. § 1915(g); that this be considered the final judgment in this case; and that any appeal **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 7th day of April, 2015

s/John S. Bryant_____
John S. Bryant
U.S. Magistrate Judge